## García et al. *v.* Garzot.

### Appeal from the District Court of Humacao.

#### No. 761.—Decided November 11, 1912.

Minors—Marriage of Minor—Consent of Family Council to Marriage of Minor—Guardian—Presumption.—In accordance with articles 45 and 46 of the Spanish Civil Code, which was in effect in Porto Rico in October, 1892, the family council and not the guardian must grant a minor the necessary consent to contract marriage, and when, as in the case at bar, it is not alleged or proven that the family council failed to grant such consent it must be presumed that the marriage was celebrated in conformity with said requisite of the law then in force.

Id.—Emancipation of Minors.—The Spanish Civil Code in force in this Island in October, 1892, distinguishes between two classes of emancipation of minors: One which may be termed complete and which is acquired when a person becomes of age and another which might be termed restricted which is acquired by marriage or by consent of the father or mother exercising the *patria potestas.*

Id. — Emancipation of Minors — Restrictions Relative to Control of Property by Emancipated Minors. — Restricted emancipation, in accordance with the old Civil Code, qualifies the minor to control his person and property as if of age, but under the restrictions specified in articles 59 and 60 of the said code when the emancipation is acquired by marriage. Article 317 of the aforesaid code is not applicable to emancipation by reason of marriage.

Mortgage—Cancellation of Mortgage.—A mortgage is a real right to real property and is classified in the Civil Code as real property. To cancel a mortgage is to declare it extinguished, to dispose of it and, consequently, to alienate it.

Alienation—Mortgage—Servitude.—Alienation is the act whereby the ownership of a thing is transferred to another without a consideration as a gift or with a consideration as a sale or exchange. Taking this word in its broadest sense it also includes emphyteusis, pledge, mortgage and even the creation of a servitude upon an estate. Hence he who cannot alienate a thing cannot pledge it or encumber it with a mortgage or burden it with a servitude.

Id.—Cancellation of Mortgage by Minor Emancipated by Marriage.—The cancellation of a mortgage constitutes a real act of alienation because the creditor thereby relinquishes a real right which belongs to him and, therefore, in accordance with the Spanish Civil Code in force in Porto Rico in October, 1892, a minor emancipated by marriage had no power by reason of that fact alone to cancel mortgages created in his favor.

Baptismal Certificate—Ecclesiastical Proceedings.—In accordance with the law in force in Porto Rico in October, 1892, the ecclesiastical authorities had power to hear and decide proceedings relative to the record of a baptismal certificate instituted by a petitioner for the purpose of proving the date of his birth, and the decision rendered by said authorities was therefore valid and effective.

CANCELLATION OF MORTGAGES BY EMANCIPATED MINOR.—In the present case it was shown that a minor who lacked but a few months of his majority had been married for some time and therefore was emancipated by reason of his marriage, that he had children and had prosecuted proceedings in the Bishopric relative to the record of his baptismal certificate, that the record showed that he was of age, that he had appeared before a notary on two occasions and stated that he was of age, presenting in support of his statements his said baptismal certificate and his certificate of identification (*cédula de vecindad*), and that he had canceled a certain mortgage created in his favor. It was shown, moreover, that the debtor discharged his obligation without knowing that his creditor was not yet of age, that the minor lived nearly four years after the cancellation of the mortgage without making any claim, and that this claim for a second payment of the debt, plus the interest, has been filed by the creditor's heirs after the lapse of 14 years from the date of the execution of the deeds. *Held:* That under such circumstances the cancellation made by the minor should be considered valid and effective and the debtor free from his debt.

The facts are stated in the opinion.

*Mr. Luis Llorens Torres* for appellants.

*Mr. Juan Hernández López* for respondent.

MR. JUSTICE DEL TORO delivered the opinion of the court.

The complaint in this case is founded on the following allegations:

1. The plaintiffs herein are Francisco Paxot García and Adriana Paxot García, who are under 21 years of age and appear represented by their mother, María García Buxó, who exercises *patria potestas* over them.

2. The defendant is Juan R. Garzot, a citizen of Porto Rico, over 21 years of age, married, a property owner and resident of the municipal district of Naguabo within the Judicial District of Humacao.

3. The plaintiffs, Francisco and Adriana, are the universal heirs of José Paxot Gragirena, husband of the plaintiff, María García Buxó. Said Paxot Gragirena died on July 14, 1899, leaving the two plaintiffs aforesaid as his sole legitimate children and descendants, they having been born of said marriage. Subsequently they were declared to be the heirs of their aforesaid father by a judgment of the District Court of Humacao rendered December 29, 1900. The right sought to be vindicated in the action now instituted by the plaintiffs

accrues to them in their character as heirs of the deceased José Paxot Gragirena.

4. In the year 1895 the said José Paxot Gragirena, father of the plaintiffs, was the holder of a mortgage on a farm property known as "San Cristóbal" which at that time belonged to the defendant, Juan R. Garzot. Said mortgage was for the sum of 6,000 *pesos,* equivalent to $3,600, and earned an interest of 600 *pesos* ($420) per year.

5. In the same year, 1895, the said José Paxot Gragirena, father of the plaintiffs and mortgage creditor of the defendant, was an unemancipated minor under the tutorship of Alejandro Viader.

6. In the same year, 1895, said Alejandro Viader (tutor of the minor José Paxot) and Juan R. Garzot (debtor of said minor), being intimate friends and having made an agreement to that effect, induced the minor, José Paxot, to pursue proceedings in the parochial registry of Naguabo, in which proceedings Viader himself and other witnesses testified falsely to the effect that an absolutely false baptismal certificate was obtained stating that José Paxot was baptized in Naguabo, that Viader was his godfather, and that he was born in February, 1872. This was all absolutely false and simulated, the truth being that José Paxot was not baptized in the church of Naguabo, but in San Juan, Porto Rico; that his godfather was not Viader, his tutor, but Cristóbal Paxot; that he was not born in Naguabo in 1872, but in San Juan in March, 1873, and that Garzot and Viader having knowledge of the facts caused said proceedings to be instituted with the object of representing José Paxot as being already 23 years of age in 1895.

7. In the same year, 1895, said José Paxot, being then a minor, signed a receipt or release in favor of the defendant Garzot stating that he had received from his debtor the full amount of the principal and interest due him by virtue of the mortgage hereinbefore mentioned; and it is alleged as true that whether José Paxot received such amounts or not,

either from Garzot or from any other person, he derived no benefit therefrom, that it was useless for him to receive them, and that they were never used for his benefit. In fact, in the year 1895 and thereafter up to the time of his death in 1899, José Paxot acquired no property of any kind, either real or personal, nor had he any money in 1896, when he attained his majority, nor up to the date of his death, nor did he enter into any contract of purchase, loan, or any other kind; and therefore it is alleged that if José Paxot received the amount of such debt in 1895 when he was under age he wasted it or spent or lost it before attaining his majority in 1896 and prior to his death in 1899.

8. In the payment of the mortgage debt made by Garzot to José Paxot while the latter was under age (in the year 1895), as already explained, his guardian did not intervene, nor was authority secured from the family council, nor was said minor represented by any person to substitute his legal incapacity.

9. At the time when it appears that the defendant Garzot made the payment to the minor, Juan Paxot (1895), the mortgage debt with interest included amounted to 10,000 *pesos,* equivalent to $6,000. The interest on this amount from 1895 to 1910, at 12 per cent per annum, which is the rate stipulated in the mortgage deed, amounts to $10,000, which added to the $6,000 of the debt makes a total of $16,000, the amount claimed in this action by the plaintiffs from the defendant.

On the strength of these allegations, which we have copied literally, the plaintiffs prayed the court to render judgment declaring any payment made by the defendant Juan H. Garzot to José Paxot Gragirena prior to March 18, 1896, without the intervention of his guardian and without the consent of the family council to be null and void; and declaring especially the payment made in 1895, as referred to in the allegations, to be dishonest, wherefore the defendant is under the obligation to pay to the plaintiffs the amount of that debt

anew plus the interest to date; and in consequence thereof to adjudge the defendant Garzot to pay to the plaintiffs the sum of $16,000, which is the actual amount of the capital dishonestly paid plus the interest thereon, and to tax the costs against the defendant.

The defendant made a general and specific denial of each and every one of the allegations set forth in the complaint, and as his defense and answer in opposition thereto made the following allegations:

1. In the town of Naguabo on May 27, 1895, José Paxot Gragirena, a tradesman, married, who averred that he was of age, appeared before Notary Marcelino Estevanez Nanclares and presented besides his *cédula personal* (certificate of identification) No. 131, a certified copy of his baptismal certificate issued by the parish priest of Naguabo, stating that said José Paxot was born on February 1, 1872, which certificate was signed and returned to him by the notary. As such person José Paxot acknowledged receipt to his entire satisfaction from Juan R. Garzot of the sum of 2,000 *pesos* in the money then current as part payment of the sum of 6,000 *pesos,* the amount of a debt secured by a mortgage on the estate "San Cristóbal" situated in said municipal district of Naguabo, and executed in favor of said Garzot a full release for said amount plus the accrued interest. As a consequence of the foregoing said mortgage debt was partly canceled in the terms used in the deed of partial cancellation of mortgage, which deed, No. 118, was executed by said Paxot in Naguabo on said May 27, 1895, before Notary Marcelino Estevanez Nanclares.

2. At the time the deed mentioned in the foregoing paragraph was executed the said José Paxot Gragirena was a married man his wife being María García Buxó, with whom he contracted solemn and canonical marriage at the parochial church of the town of Naguabo on October 6, 1892.

3. José Paxot Gragirena lived in the said town of Naguabo until July 14, 1899, on which date he died.

4. By deed No. 220, executed by José Paxot Gragirena in the town of Humacao on September 26, 1895, before Notary Marcelino Estevanez Nanclares, Paxot acknowledged receipt from Juan Garzot of the sum of 4,000 *pesos,* current money, in payment of the balance due on the mortgage referred to in the first paragraph of this answer, and gave him a full release and totally canceled the mortgage credit, as appears from the terms of the aforesaid deed. When José Paxot appeared before the notary he exhibited his *cédula personal* (certificate of identification) and said that he was of age and in the full enjoyment of his civil rights, with unrestricted capacity to dispose of his property.

5. In the parochial archives of the parish churches of San Francisco and of Nuestra Señora de los Remedios in the city of San Juan, P. R., it does not appear that José Paxot Gragirena was born on March 18, 1873. On the contrary, in open and manifest opposition to this supposed fact at folio 238 of book 24 of the baptismal register of the parish church of Nuestra Señora de los Remedios the record appears of the birth of a child who, upon being baptized, was given the name of Jaime Gregorio, born on May 25, 1873, the legitimate child of Jaime Paxot and Adriana Gragirena, who are the parents of José Paxot Gragirena.

6. In the investigations made in preparing this answer the birth of José Paxot, the legitimate child of Jaime Paxot and Adriana Gragirena, was found registered by virtue of an ecclesiastical record the original of which is on file in the archives of the ecclesiastical notary in the bishopric of this Island of Porto Rico.

At the trial of the case the defendant fully admitted the first, second, third, and fourth allegations of the complaint.

He also admitted the fifth allegation to the extent that in 1895 José Paxot Gragirena was under 23 years of age, but denied that at that time said minor was not emancipated.

The defendant also admitted the sixth allegation of the complaint in so far only as it states that José Paxot was

not born in Naguabo in February, 1872, but in San Juan, Porto Rico, on March 18, 1873, but denied the other statements therein made which refer to Garzot's conspiracy and to the date of the proceedings.

The defendant also admitted the seventh allegation of the complaint in so far as it states that Garzot was the mortgage debtor of Paxot and that the said mortgages were paid by Garzot to Paxot when the latter was under 23 years of age, but he denies the allegations referring to the benefit or otherwise derived by Paxot from the receipt of that money, and also all the other statements made in the said seventh allegation.

He also admitted the eighth allegation except in so far as it says that Paxot was an incapacitated minor.

The defendant further admitted the ninth allegation of the complaint provided the sums to which it states the mortgages amounted coincide with the mortgage deeds which he introduced in evidence.

The plaintiffs admitted all the allegations made in the answer except the last, which was withdrawn by the defendant, and introduced documentary and oral evidence, the first of which consisted of a baptismal certificate, wherein it is stated that José Paxot Gragirena was born in San Juan, Porto Rico on March 18, 1873; two certificates of death showing that the parents of José Paxot died prior to 1895, and a deed of assignment of a mortgage credit executed in favor of José Paxot. The oral evidence consisted of the testimony of María García and José González Darder. The plaintiffs introduced no evidence relative to the conspiracy alleged in the sixth allegation of the complaint.

The defendant introduced documentary evidence consisting of the records of the ecclesiastical proceedings to secure the baptismal certificate of José Paxot, which proceedings were instituted and decided in the bishopric of Porto Rico in 1895, and the pub'ic deeds referred to in the first, second, and fourth allegations of the answer.

On the strength of these allegations and evidence the District Court of Humacao rendered judgment on March 24, 1911, in favor of the defendant, from which judgment the plaintiffs took this appeal.

The facts relative to the conspiracy of the defendant to represent José Paxot as being of full age when as a matter of fact he was not, were absolutely eliminated from this suit when they were denied by the defendant and the plaintiffs failed to introduce evidence in support thereof.

The fact of the payment made by Garzot to Paxot was admitted in the complaint and proved at the trial. The acknowledgment made by Paxot before the notary public, before whom the deeds cancelling the mortgage were executed, remains uncontradicted.

The fact that José Paxot was born on March 18, 1875, was admitted by the defendant and, besides, proven by the plaintiffs.

Therefore the only issue in this case is whether or not José Paxot Gragirena had legal capacity to execute the deeds canceling the mortgage, which he executed on May 27 and September 26, 1895, inasmuch as at that time he was not yet 23 years old, the age which the law then in force fixed as the age of majority.

This question has been presented and may be viewed under two different aspects:

1. Was Paxot on the date the deeds were made emancipated by reason of his marriage, and if so, had he power to cancel a mortgage executed in his favor?

2. Under all the circumstances of this specific case should the deeds canceling the mortgage be regarded as valid and effective?

When said deeds were executed Paxot was over 18 years of age and had already been married for some time to María García Buxó, the mother of he plaintiffs. The marriage took place on October 6, 1892.

The plaintiffs introduced oral testimony at the trial tend-

ing to show that said marriage was contracted without the consent of his tutor and that, therefore, it did not have the effect of securing to Paxot the administration of his property.

Considering the provisions of articles 45 and 46 of the Spanish Civil Code as then in force in Porto Rico the conclusion is reached that it was the family council and not the tutor which should have given the consent in this case, and inasmuch as it has not been alleged or proven that the family council failed to give such consent, it must be presumed that the marriage was celebrated in conformity with said requisite of the law then in force.

Paxot, therefore, having been legally married he, became emancipated by right.

Now the Spanish Civil Code, which is applicable to this case, distinguishes between two classes of emancipation— one which we may call complete and which is acquired by a person upon attaining his majority, and another which we may term limited, which is acquired by reason of marriage or by concession of the father or of the mother exercising *patria potestas.*

Restricted emancipation enables the minor to control his person and property as if of age, subject, however, to certain restrictions which the law itself imposes upon him.· In the case of emancipation by marriage these restrictions, according to the provisions of article 315 of the Spanish Civil Code, are contained in article 59 and in rule 3 of article 50 of said code.

Article 59 reads as follows:

"The husband is the administrator of the property of the conjugal partnership, except when the contrary is stipulated and in the case of article 1384.

"If he is under 18 years of age, he cannot administer without the consent of his father; in the absence of the latter, that of the mother, and in the absence of both without that of his guardian. Neither may he appear in a suit without the appearance of said persons.

"In no case, until he has attained majority, may the husband, without the consent of the persons mentioned in the preceding paragraph, borrow money, encumber, or alienate the real property."

Several opinions have been delivered as to whether article 317 of the Spanish Civil Code is applicable also to cases of emancipation by marriage, but the General Directorate of Registries in its decision of December 14, 1896, and in others, and the Supreme Court of Spain in its judgment of June 19, 1906, have decided this in the negative. Accepting this as a criterion, let us ascertain whether a minor emancipated by reason of marriage may by himself alone cancel a mortgage created in his favor.

In specifying what a minor is prohibited from doing without the consent of the persons mentioned, the legislators provided that he could not *encumber or alienate real property.*

A mortgage is a real right over real property and is classified in the code also as real property. (Par. 10, art. 334 of the Spanish Civil Code.) To cancel a mortgage is to declare it extinguished; to dispose of, and, therefore, to alienate it.

"Alienation is the act whereby the ownership of a thing is transferred to another without a consideration, as a gift, or for a valuable consideration, as a sale or exchange. Taking this word in its broadest sense, it includes also emphyteusis, pledge, mortgage, and even the creation of a servitude upon an estate. Hence, he who cannot alienate a thing, is also unable to pledge it or to encumber it with a mortgage, or to burden it with a servitude. 'He who is prohibited from alienating a thing,' says law 10, title 33, *partida* 7, 'cannot sell, exchange, or pledge it, or burden it with a servitude or annuity in favor of any of those persons to whom he cannot alienate the same.' " (2 Escriche, 803.)

And this court, through Mr. Chief Justice Hernández, has expressed itself as follows:

"The cancellation of a mortgage constitutes an alienation, because the creditor thereby relinquishes a property right in real estate, and therefore it cannot be accomplished without express commission

therefor." (*Benítez Hermanos* v. *The Registrar of Property,* 17 P. R. R., 221.)

The question in its first aspect is therefore decided as follows: At the time the deeds were executed Paxot was a minor emancipated by marriage, but he did not have power for that reason alone to cancel mortgages created in his favor.

Let us now consider the question in its second aspect.

The records of the ecclesiastical proceedings held in the bishopric of Porto Rico in 1895 at the request of Paxot and relative to his baptismal certificate are a part of the transcript of the record. The said proceedings originated in a written petition signed by José Paxot y Gragirena dated February 13, 1895, which reads as follows:

"José Paxot, born and residing in this town, a legitimate son of Jaime and Adriana Gragirena, respectfully represents to Your Excellency that having need of a baptismal certificate for family purposes, an active search has been made among the archives of this parish, but it has not been possible to find the certificate.

"Therefore, I respectfully ask Your Excellency to be good enough to issue the necessary orders to remedy so grave an evil. I shall be ever grateful to Your Excellency for this favor and shall pray God to preserve your precious life for many years."

The bishop issued an order directing the priest of Naguabo to take the testimony of such witnesses as the party might produce to prove the year, month, and day of the petitioner's birth and baptism. And, consequently, the witnesses, José Catarinau and Juan Martínez, testified before the priest and said in substance that they were acquainted with José Paxot, legitimate son of Jaime Paxot and Adriana Gragirena, and that they knew that he was born in Naguabo on February 1, 1872, and that he was baptized in the parish church of the town where he was born.

The priest furthermore certified that he had examined the archives and that the baptismal certificate of Paxot was not recorded therein; and the biship, with such data as a base,

decided the petition filed by the ancestor of the plaintiffs in the following terms:·

"Porto Rico, March 13, 1895. In consideration of the petition filed by José Paxot for a certificate. of baptism, it having been proven that José was born on February 1, 1872, and was baptized in the parish church of Naguabo by Father Meléndez, as the legitimate son of Jaime Paxot and Adriana Gragirena, his godparents being Alejandro Viader and Asunción Ramírez de Arellano, his paternal grandparents being Tito and Carmen Ramírez, and his maternal grandparents, José and Asunción Ramírez y Arellano, the parish priest of Naguabo is hereby authorized, after obtaining the necessary information as to the date of the baptism, to enter the record on the proper page and in the proper book, with a marginal note setting forth the volume and page on which the record has today been entered, for the purpose of facilitating a search therefor at any time hereafter. (Signed) Licentiate Francisco Delgado. (Signed) José C. Vinals."

According to the law in force at that time the ecclesiastical authorities had power to commence and decide the proceedings herein referred to, and the decision thereof was therefore valid and effective. The legal truth with regard to the birth and baptism of Paxot Gragirena was therefore established, and it was under such circumstances that Paxot Gragirena executed the deeds now sought to be annulled.

The appearance of the parties concerned in said documents was set forth in the document of May 27 as follows:

"Personally appeared José Paxot y Gragirena, tradesman, and Juan R. Garzot y Romero, proprietor, both of age, married, and residents of this town, and exhibited their *cédulas personales* (certificates of identification) numbers 131 and 1 of the seventh and fourth class, respectively, of the current fiscal year; Paxot further produced a certified copy of his baptismal certificate issued on the first of April last by the parish priest of this town, Pedro Casado, on paper bearing a stamp of the eleventh class, to prove his majority, which certificate shows that he was born on February 1, 1872, and which I sign and return. Both parties state that they fully enjoy all their civil rights and are free to dispose of their property, and for these reasons

I consider that they have the necessary legal capacity to execute this deed of partial cancellation of a mortgage. The parties freely state," etc.

And in the document of September 26:

"José Paxot y Gragirena, tradesman, and Juan R. Garzot y Romero, proprietor, both of age, married, residents of Naguabo and possessing, respectively, *cédulas personales* (certificates of identification) numbers 85 and 1, of the seventh and fourth class, respectively, for the current fiscal year, appear and state that they are in the full enjoyment of their civil rights and free to dispose of their property, wherefore I deem them to have the necessary legal capacity to execute this deed for the total cancellation of a mortgage. The parties made the following statements of their own free will."

At the time the deeds were executed Paxot, according to the documents which he himself exhibited, was 23 years of age; and according to the documents offered in this suit by his heirs, he had already completed his 22d year—that is to say, one year more than the law at present requires for the attainment of majority. Moreover, Paxot was at that time a married man and had children and the right to manage his property. He died nearly four years after the deeds were executed having made no claim whatever against the defendant. This claim was entered by his heirs 10 years after his death. There is not the slightest evidence to show that the defendant knew that Paxot lacked a few months of attaining his majority or that Paxot was in any way prejudiced by the transaction effected.

Under such circumstances would it be possible now for a court of justice to render a judgment sentencing the defendant to pay again a debt already satisfied plus the interest, the whole amounting to some $16,000?

A negative reply forces itself upon us and it is a reply which is in conformity with the jurisprudence laid down by the Supreme Court of Spain in its judgment of April 27, 1860, declaring that "sales of real property made by minors are

valid when they feign to be over 25 years of age and induce the other parties to the contract to believe that they are of that age by reason of the fact that they are nearly so, are married and have the management of their property, or by other special circumstances that may exist."

The only difference that may be observed between the case decided by the Supreme Court of Spain and the one at bar is that in the latter the fact that Paxot feigned to be of age when he appeared to execute the deeds has not been shown; but although this may be true the fact was proven that Paxot personally requested that his baptismal certificate, which stated that he was born on February 1, 1872, be recorded; that he also personally appeared on two occasions before a notary public and affirmed that he was of age, presenting for the purpose a certified copy of his baptismal certificate and his *cédula* (certificate of identification), and that therefore he knowingly or unknowingly induced the defendant Garzot to consider him as being of age and to pay him his debt, and it cannot be said that in acting thus the defendant, under all the circumstances of this case, failed to act as a man of prudence.

The question in its second aspect is therefore decided as follows: Considering all the circumstances of this particular case the deeds canceling the mortgage to which this suit refers should be held to be valid and effective, and, therefore, that the payment made in good faith by Garzot to Paxot, who was in possession of his credit, freed the former from the debt which he had contracted with the latter. Art. 1164 of the Spanish Civil Code and 1132 of the Revised Civil Code.

Having arrived at the foregoing conclusion, it is unnecessary to consider the question of prescription which was argued fully by the attorneys for both parties.

The judgment appealed from should be affirmed and the appeal dismissed.

*Affirmed.*

Chief Justice Hernández and Justices MacLeary, Wolf and Aldrey concurred.